J-S21043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :          PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| NICOLE MARIE SHIELDS | : |
| | : |
| Appellant | : No. 1370 MDA 2025 |

Appeal from the Judgment of Sentence Entered August 28, 2025
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-MD-0003594-2025

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED: AUGUST 12, 2026**

Nicole Shields appeals the one-to-six-month judgment of sentence imposed after she was found in indirect criminal contempt for violating a protection from abuse (PFA) order. She challenges the sufficiency of the evidence to prove she acted with wrongful intent. We affirm.

At the violation hearing in this case, the trial court took judicial notice of the PFA final order entered against Nicole Shields by agreement, effective from July 22, 2025, through January 22, 2026. N.T., 8/28/25, at 5. Although the order did not prohibit Nicole Shields from contacting the plaintiff, her mother Jean Shields, it "completely evicted and excluded" Nicole Shields "from the residence at" Jean Shields' address. ***See id.*** "Exclusive possession of the residence is granted to Plaintiff. Defendant shall have no right or privilege to enter or be present on the premises of Plaintiff or any other person protected under this order." ***See id.***

Jean Shields testified that on August 22, 2025, she saw Nicole Shields on her porch, apparently sleeping. *Id.* at 6–7. When Jean Shields told Nicole Shields she had to leave, she "got upset, because she said she had nowhere else to go; and, that if I wanted her out of there, to call the police." *Id.* at 7. Jean Shields called the police, who removed Nicole Shields from the porch. *Id.* Jean Shields heard Nicole Shields tell the police that she was homeless, had nowhere to go, and needed a shower; Nicole Shields said "to just take her to jail." *Id.* at 7–8. Jean Shields denied that she told Nicole Shields she could come in and get a shower. *Id.* at 9.

Kingston Police Officer John Karasinski testified that he was dispatched to Jean Shields' address and saw Nicole Shields on the porch. *Id.* at 10. Officer Karasinski recounted what Nicole Shields told him:

Q      What did you tell the Defendant when you got there?

A      I asked her if she knew she wasn't supposed to be there, and she told me, yes; and, she stated that she has been sleeping in Kirby Park, and she didn't care because she had her period and she needed a shower.

Q      And did she say anything else about knowing about any PFA?

A      She knew that she shouldn't be there, and she said take her to jail. Then we advised her that there was an active PFA in place. So we went back to the police station and verified that the PFA was served and active.

*Id.* at 10–11.

Nicole Shields admitted that she went to the house to sleep on the porch. *Id.* at 14. She explained that she had been stabbed, was in distress,

and had nowhere else to go. *Id.* Nicole Shields agreed that she admitted to the officer that she was in violation of the PFA order "because I am not a liar." *Id.* at 15. However, she questioned the order's validity. *Id.* at 12, 17.

The trial court found Nicole Shields guilty of indirect criminal contempt and imposed a sentence of one to six months of confinement. Nicole Shields timely appealed. The trial court did not direct her to file a concise statement of errors complained of on appeal. The trial court entered an opinion reasoning that the evidence was sufficient to sustain its finding of contempt and that Nicole Shields did not preserve any challenge to her sentence.

Nicole Shields presents two questions for review:

1. Did the trial court err in finding Appellant guilty of indirect criminal contempt where the Commonwealth failed to prove beyond a reasonable doubt that Appellant acted with wrongful intent, given that (a) the PFA Order's express permission of contact with the complainant while simultaneously prohibiting Appellant's presence at the residence created genuine ambiguity as to the scope of the Order's prohibitions, and (b) the totality of the circumstances -- including Appellant's untreated mental illness, homelessness, physical injury, and non-threatening conduct -- demonstrates the absence of the wrongful intent necessary to sustain a conviction for indirect criminal contempt?

2. Alternatively, even if a technical violation of the PFA Order is established, did the trial court err by imposing sentence where Appellant's conduct was de minimis and non-threatening such that the sentence must be vacated?

Nicole Shields' Brief at 2.

In her first issue, Nicole Shields challenges the sufficiency of the evidence to sustain her conviction for indirect criminal contempt. She argues that the evidence did not prove that she acted with wrongful intent, both

because the PFA final order did not prohibit contact and because of the circumstances of her actions.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (*en banc*) (quoting *Commonwealth v. Woodard*, 129 A.3d 480, 489–90 (Pa. 2015)).

Courts have statutory authority to hold a defendant in indirect criminal contempt for violating a PFA order and punish "in accordance with law." *Id.* (quoting 23 Pa.C.S. § 6114(a)). The Commonwealth must prove four elements to establish indirect criminal contempt:

> (1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation was volitional; and (4) the contemnor acted with wrongful intent.

*See id.* at 614–15 (citing *Commonwealth v. Jackson*, 10 A.3d 341, 346 (Pa. Super. 2010)). The fourth element recognizes that contempt requires "some sort of wrongful intent," *i.e.*, "[a] degree of intentional wrongdoing." *Commonwealth v. Washington*, 353 A.2d 806, 807 (Pa. 1976) (quoting *Offutt v. United States*, 232 F.2d 69, 72 (D.C. Cir. 1956), and *In re Brown*, 454 F.2d 999, 1006 (D.C. Cir. 1971)). "A contemner acts with wrongful intent

if he 'knows or should reasonably be aware that his conduct is wrongful.'" ***Commonwealth v. Garrison***, 386 A.2d 971, 979 (Pa. 1978) (plurality opinion of Roberts, J.) (citing ***United States v. Seale***, 461 F.2d 345, 368 (7th Cir. 1972)).

When a court order is in effect, including a PFA order, the wrongfulness of the intent required for contempt comes from deciding to violate the terms of the order. "Wrongful intent can be imputed by virtue of the substantial certainty that by choosing an action, the defendant would know he would be in violation of the PFA Order." ***Shaner v. Harriman***, 189 A.3d 1088, 1092 (Pa. Super. 2018) (*en banc*) (citing ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 111 (Pa. Super. 2007)).

Here, although the PFA final order did not prohibit Nicole Shields from contacting Jean Shields, it "completely evicted and excluded" Nicole Shields from Jean Shields' residence. The order did not permit nonviolent intrusions on the outer limits of the property. The order made no exceptions if Nicole Shields was homeless, injured, or unhealthy. Officer Karasinski testified that Nicole Shields acknowledged she was not supposed to be there but said she did not care. Nicole Shields agreed that she understood she was violating the order. This evidence, viewed in a light most favorable to the Commonwealth, supports a finding that Nicole Shields knew that going to the porch would violate the PFA order and therefore that she did so with wrongful intent. Nicole Shields' first issue fails.

In her second issue, Nicole Shields likens the circumstances of her case to those in *Commonwealth v. Haigh*, 874 A.2d 1174 (Pa. Super. 2005), and characterizes her violation as de minimis. In *Haigh*, a PFA final order prohibited the defendant from having any contact with his wife. *Id.* at 1175. During a courtroom hearing, the shackled defendant shuffled towards his wife, leaned over, and asked her about her medical condition. *Id.* at 1176. This Court reversed his conviction for indirect criminal contempt, reasoning that the defendant's belief "that the PFA order was relaxed to some extent in the courtroom context" precluded a finding of wrongful intent. *Id.* at 1177.

Here, we note none of "the peculiar circumstances" that excused the defendant's behavior in *Haigh*. *Cf. id* at 1178 & n.5. Nicole Shields' entry onto the porch was not in a courtroom setting where one might believe the PFA order's directives were relaxed; it was at the address identified on the order. Nicole Shields was not shackled or in police custody when she went to the porch. Nicole Shields did not feign concern for Jean Shields' wellbeing when she violated the order. Although Nicole Shields is Jean Shields' daughter, this does not distinguish her case; every PFA case is between "family or household members." *See* 23 Pa.C.S. § 6102(a) (definitions). Thus, the PFA court did not err by imposing a sentence, and by not excusing Nicole Shields' violation as de minimis or non-threatening, where she refused to leave and told Jean Shields to call the police. Nicole Shields' second issue fails.

Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2026